UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

McMAHAN SECURITIES CO. L.P,

        Plaintiff,

-vs-                                          Case No.  8:04-cv-1791-T-24TGW

FB FOODS, INC., f/k/a
Funny Bagel Food Company, Inc.,

        Defendant.
_____/

## **O R D E R**

This cause comes before the Court on Defendants', William Salgado ("W. Salgado") and Alexander Salgado ("A. Salgado")(collectively "the Salgados"), motion to dismiss McMahan Securities Co. L.P.'s ("MSC") amended complaint (Doc. No. 182). MSC filed a response in opposition thereto (Doc. No. 189).

### **I.    Background and Procedural History**

MSC is a Delaware limited partnership with its principal place of business in Greenwich, Connecticut (Doc. No. 1, ¶3). FBF is a Florida corporation with its principal place of business in Miami, Florida (Doc. No. 1, ¶11).

On or about November 7, 2003, MSC and FBF entered into an agreement ("Agreement")[1]

---

[1] The Court notes that a copy of the Agreement was not filed with the complaint (Doc. No. 1) or answer, affirmative defenses and counterclaim (Doc. No. 4). FBF later filed a Notice of Filing Exhibits to FB Foods, Inc.'s Answer, Affirmative Defenses and Counterclaim which included the Agreement and Amendment (Doc. No. 16). The Court considers the Agreement and Amendment

whereby MSC was engaged to introduce FBF to individuals and institutions who might be interested in investing in, or arranging for others to invest in, FBF's equity securities, or securities convertible or exercisable into or exchangeable for FBF's equity securities, so as to provide FBF with financing in the amount of approximately $10,000,000 to $30,000,000 (the "Services")(Doc. No. 1, ¶12 and Doc. No. 14).  The Agreement was modified to mandate that all actions under the Agreement be brought in Florida instead of Connecticut (Doc. No. 78, Salgado Aff. ¶11).[2]

In July 2004, MSC filed an action in the United States District Court for the District of Connecticut with respect to the Agreement (Doc. Nos. 59 and 77).  MSC subsequently voluntarily dismissed the Connecticut action when FBF invoked the forum selection clause in the Agreement (Doc. No. 61, Dwyer Aff. ¶¶ 6 - 8).  On August 4, 2004, MSC filed the action in this Court.

### A.     The Complaint As Originally Filed

MSC filed a two count complaint for declaratory judgment (Count I) and breach of contract (Count II) in connection with the Agreement whereby MSC was to obtain investors for FBF's equity securities (Doc. No.1).  MSC alleged in the original complaint that under

---

a part of the answer for all purposes.  See Fed. R. Civ. P. Rule 10(c).

[2]Paragraph 8 of the Agreement provides in relevant part, "[t]he parties agree that any disputes arising out of, in connection with or with respect to this agreement shall be adjudicated in a state or federal court of competent civil jurisdiction sitting in the State of Florida and nowhere else.  Each of the parties hereto irrevocably submits to the jurisdiction of any such court for the purposes of any suit, civil action or other proceeding arising out of, in connection with or with respect to this agreement.  To the extent permitted by applicable law, each of the parties hereto hereby waives and agrees not to assert by way of motion, as a defense or otherwise in any such suit, any claim that is not subject to the jurisdiction of the above courts, that such suit is brought in an inconvenient forum, that the venue of such suit is improper or that it is entitled to a trial by jury."

paragraph 5(b) of the Agreement, its obligation to perform the Services was conditioned upon its satisfaction, at its sole discretion, that there was no material adverse change in FBF's business, financial condition, or business prospects. MSC alleged that it performed all of its obligations under the Agreement but that subsequent to entering into the Agreement, FBF experienced material adverse changes in its business, financial condition, and/or business prospects. MSC contended that FBF sought to blame MSC for those adverse changes and demanded that MSC provide financing to FBF in the amount of $15,000,000.

In part, MSC sought a declaratory judgment from this Court that (a) it was not liable to FBF for any material adverse changes in FBF's business, financial condition, and/or business prospects; (b) it was not obligated to provide financing to FBF; and (c) it was not obligated under the Agreement or otherwise to provide continuing services to FBF.

FBF filed an answer, affirmative defenses, and a counterclaim (Doc. No. 4). The counterclaim alleged anticipatory repudiation (Count I), breach of contract (Count II), and unjust enrichment (Count III). Specifically, FBF alleged in its counterclaim that on or about January 7, 2004, the parties entered into an amendment to the Agreement ("Amendment") and that MSC breached the Agreement and Amendment by, "among other things, improperly terminating the Agreement, failing to use its best efforts to locate potential investors, and fraudulently and continuously representing to FBF that it had commitments from certain private investors who were ready, willing and able to inject substantial capital into FBF" (Doc. No. 4).

On April 13, 2005, this Court dismissed Count II of FBF's counterclaim with prejudice to the extent that FBF alleged breach of contract against MSC based upon: 1) an implied obligation for MSC to use its best efforts in locating and securing capital investments from private

investors; and 2) MSC's alleged wrongful communications with potential private investors (Doc. No. 39). The Court also dismissed Count III of FBF's counterclaim without prejudice and granted MSC's motion to strike FBF's affirmative defenses to the extent that FBF's second, third and sixth affirmative defenses contained language that MSC failed to use its best efforts to locate potential investors. On May 11, 2005, MSC filed its Amended Answer to Counterclaim (Doc. No. 44).

On May 19, 2005, FBF sought leave to amend its answer and affirmative defenses to correct a purported scrivener's error in connection with its first affirmative defense (Doc. No. 47). On June 16, 2005, MSC filed a Motion to Strike the First Affirmative Defense in Defendant's Answer or, in the Alternative, to Transfer this Action to the District of Connecticut (Doc. No. 60).[3] On October 28, 2005, this Court denied FBF's motion for leave to amend its answer and affirmative defenses and granted MSC's motion to strike FBF's affirmative defense to the extent that FBF's affirmative defense which referenced FLA. STAT. § 620.9103 was stricken (Doc. No. 142).

### B. The Amended Complaint

On November 2, 2005, MSC filed its third motion[4] for leave to amend its complaint with

---

[3] On September 16, 2005, this Court granted MSC's Unopposed Motion to Withdraw Requests to Transfer this Action to the District of Connecticut (Doc. No. 110).

[4] On September 16, 2005, MSC filed its first motion for leave to amend its complaint with a proposed amended complaint attached (Doc. No. 112). On October 18, 2005, MSC withdrew its first motion for leave to amend its complaint (Doc. No. 134). On November 1, 2005, MSC filed its second motion for leave to amend its complaint with a proposed amended complaint attached (Doc. No. 147). On November 2, 2005, MSC withdrew its second motion for leave to amend its complaint (Doc. No. 148).

a proposed amended complaint attached (Doc. No. 149 and Exh. A. thereto).[5]  MSC stated that it was seeking to amend its complaint based on newly discovered evidence and to add as additional party defendants the Salgados.  The language of the 3.01(g) certification in MSC's third motion to amend its complaint read as follows:

> Undersigned counsel certifies that counsel for McMahan Securities Co., L.P. conferred with counsel for FB Foods, Inc. in a good faith effort to resolve the issues presented herein pursuant to Middle District Local Rule 3.01(g) and that FB Foods, Inc.'s counsel did not agree to the relief sought in this Motion until they reviewed the Motion and the Proposed Amended Complaint, Exhibit "A" hereto.

On November 21, 2005, MSC filed an amended 3.01(g) certificate which stated in relevant part:

> After receipt and review of the Motion and proposed Amended Complaint, Defendant's counsel advised the undersigned on November 10, 2005 that Defendant does not oppose MSC's Motion for Leave to Amend Complaint.

(Doc. No. 163).  On November 23, 2005, this Court granted MSC leave to amend the complaint (Doc. No. 164).[6]  On November 30, 2005, MSC filed its amended complaint (Doc. No. 169).

MSC's amended complaint alleges claims for fraud (Count I), fraudulent concealment (Count II), negligent misrepresentation (Count III), reformation (Count IV), and breach of contract (Count V).  MSC also seeks a declaratory judgment from this Court that (a) it is not liable to FBF for any material adverse changes in FBF's business, financial condition, and/or business prospects; (b) it is not obligated to provide financing to FBF; (c) it is not obligated under the Agreement or otherwise to provide continuing Services to FBF; and (d) it properly

---

[5]MSC's third motion for leave to amend its complaint also included numerous exhibits in support (Exh. B - Exh. H).

[6]Although the amended 3.01(g) certificate represented to this Court that FBF did not object to MSC's proposed amended complaint, FBF and the Salgados subsequently filed Defendants' Second Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 (Doc. No. 177).  The Court will address Defendants' motion for sanctions via a separate order.

terminated the Agreement (Count VI).

### 1. The Salgados and FBF's Adult Brand

W. Salgado is the Executive Vice-President of FBF and an attorney admitted to practice in the state of Florida (Doc. No. 169, ¶13). A. Salgado is the President and Chief Executive Officer of FBF (Doc. No. 169, ¶14). In October 2003, the Salgados discussed with Michael Shillan ("Shillan")[7] the possibility of MSC's finding financing for FBF (Doc. No. 169, ¶15). MSC alleges that "FBF required the financing to develop and launch the sale of a refrigerated lunch meal for adults" ("the Adult Brand")(Doc. No. 169, ¶16).

Specifically, MSC alleges that FBF entered into discussions with to license the WWI trademark and sell the Adult Brand by and through WWI. MSC further alleges that "FBF represented to [MSC] that the execution of said licensing agreement was imminent and represented to third-parties that FBF had already entered into said licensing agreement with WWI." MSC contends that its proposed services were based upon the expected agreement between FBF and WWI (Doc. No. 169, ¶16).

### 2. FBF's Alleged Fraud in Connection with the Execution of the Parties' Agreement

On or about October 9, 2003, Shillan emailed to FBF, in editable electronic form, a draft engagement agreement which had been prepared and approved by MSC's general counsel (Doc. No. 169, ¶17). MSC alleges W. Salgado forwarded the draft engagement agreement to FBF's attorney Richard Morgan ("Morgan")[8] for review (Doc. No. 169, ¶18). MSC further alleges that

---

[7]MSC's Managing Director-Investment Banking (Doc. No. 16).

[8]Morgan is a partner in the law firm of Buchanan Ingersoll, P.C. ("BIPC") and represents FBF in the instant action.

on or about October 28, 2003, Morgan met with Shillan and "advised Shillan that Morgan was urging FBF to enter into the agreement with [MSC]" (Doc. No. 169, ¶18).

MSC alleges that Morgan and W. Salgado revised certain terms of the draft engagement agreement. Namely, the agreement as revised "provided that the validity and interpretation of the agreement would be governed by Florida law, that all disputes relating to the agreement would be adjudicated in the Florida courts, and that either party might terminate the agreement upon 30 days written notice" (Doc. No. 169, ¶21).[9]

MSC alleges that on November 6, 2003, Morgan sent Shillan the revised engagement agreement via email. The November 6, 2003 email allegedly stated in pertinent part: "Enclosed please find the Engagement Letter with revisions" (Doc. No. 169, ¶22). MSC contends that the November 6, 2003 email did not include a description of the changes made to the draft engagement agreement nor did the revised engagement agreement "indicate by markings or otherwise any of the changes made to the agreement." MSC further alleges the email does discuss "other proposed changes" to the draft engagement agreement (Doc. No. 169, ¶22). MSC alleges that Shillan responded via email that Morgan should draft the proposed additional changes to the draft engagement agreement for review and that: "The rest of it looks fine" (Doc. No. 169, ¶23).

On November 7, 2003, Shillan met with the Salgados regarding the proposed agreement between FBF and MSC. MSC alleges that at no time during the meeting did the Salgados

---

[9]MSC alleges that the draft engagement agreement "provided that the validity and interpretation of the agreement would be governed by Connecticut law, that all disputes relating to the agreement would be adjudicated in the Connecticut courts and that either party might terminate the agreement upon 10 days written notice" (Doc. No. 169, ¶21).

discuss with Shillan any of the changes made in the revised engagement agreement (Doc. No. 169, ¶24). Also on November 7, 2003, subsequent to the meeting between Shillan and the Salgados, W. Salgado faxed Shillan a copy of the engagement agreement executed by W. Salgado with the request that Shillan sign and return the same to W. Salgado (Doc. No. 169, ¶25). MSC alleges "Shillan did not recognize the significant embedded changes in the Agreement" and was thereby induced to execute the Agreement (Doc. No. 169, ¶26). MSC further alleges that had it known the substance of the changes, it would not have entered into the Agreement (Doc. No. 169, ¶29).

### 3. FBF's Alleged Misrepresentations During the Contract Period

MSC alleges that on or about February 5, 2004, WWI advised the Salgados that WWI would not enter into a licensing agreement with FBF because FBF's fiances were inadequate. MSC contends that this "constituted a material adverse change in FBF's business prospects so as to permit [MSC] to cease providing the Services to FBF" (Doc. No. 169, ¶33). However, FBF did not inform MSC of the reason WWI would not enter into a licensing agreement. Instead, the Salgados "intentionally and fraudulently misrepresented to [MSC] that FBF was having continuing discussions with WWI and that the failure to enter into the licensing agreement with WWI was because of WWI's concern with [MSC]'s involvement or that WWI had made too many demands and restrictions which were unacceptable to FBF" (Doc. No. 169, ¶¶34-37). Lastly, MSC alleges that "in order to cause [MSC] to continue searching for financing, in May and June, 2004, FBF's employees[10] advised [MSC] that "FBF had received commitments from Safeway, Giant/Ahold and Wal-Mart to purchase the Adult Brand from FBF and sell it through

---

[10]A. Salgado and Dave Smith ("Smith").

their supermarket chains" (Doc. No. 169, ¶42).

## II.   Standard of Review Motion to Dismiss

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Id. at 47.  All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).  The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).  The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures . . . to disclose more precisely the basis of both claim and defense." Conley, 355 U.S. at 48.  The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." Id.

## III.   Discussion

The Salgados now move to dismiss MSC's amended complaint in its entirety with respect to them.  The Salgados argue that MSC's amended complaint fails to state claims for fraud,

negligent misrepresentation and fraudulent concealment against them and must be dismissed. Specifically, the Salgados contend that the amended complaint fails to plead fraud with particularity in that, in Counts I-III, MSC improperly combines the Salgados and FBF in an attempt to hold them jointly and severally liable.

Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988)).

The particularity requirement of Rule 9(b), however, does not abrogate the concept of notice pleading embodied in Federal Rule of Civil Procedure 8(a). Id. In fact, when considering a motion to dismiss for failure to plead fraud with particularity, the Eleventh Circuit instructed courts to "harmonize the directives of rule 9(b) with the broader policy of notice pleading." See Friedlander v. Nims, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

Accordingly, the Eleventh Circuit has concluded that Rule 9(b) may be satisfied when a plaintiff alleging fraud pleads: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which the statement misled the plaintiff; and (4) what the defendant gained by the alleged fraud. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997). Additionally, the Eleventh Circuit has also stated that Rule 9(b) may be satisfied through other,

alternative means. Id. (citing Durham, 847 F.2d at 1512); see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) (commenting that allegations of date, place, and time satisfy Rule 9, but are not required by it). For example, "while mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." In re Sahlen & Assocs., Inc., 773 F. Supp. 342, 352 (S.D. Fla. 1991).

When reviewing the amended complaint against these standards, this Court finds that MSC has plead Counts I - III with sufficient particularity to satisfy Rule 9(b). The amended complaint sets forth a description of the Salgados' allegedly wrongful conduct and specific incidences of their individual alleged participation in the fraudulent behavior. As plead, the amended complaint gives each of the Salgados notice of the claims against them and provides each of the Salgados with enough information to properly formulate a defense. Accordingly, the Salgados' motion to dismiss MSC's amended complaint is denied.

### **IV.      Conclusion**

Having considered the motions, it is **ORDERED AND ADJUDGED** that the Salgados' motion to dismiss MSC's amended complaint (Doc. No. 182) is **DENIED**. The Salgados shall have to and including July 7, 2006, to respond to the amended complaint.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of June, 2006.

Copies to:

Counsel of Record

SUSAN C. BUCKLEW
United States District Judge