UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

McMAHAN SECURITIES CO. L.P,

    Plaintiff,

-vs-                    Case No. 8:04-cv-1791-T-24TGW

FB FOODS, INC., f/k/a
Funny Bagel Food Company, Inc.,

         Defendant.
_____/

# **O R D E R**

This cause comes before the Court on McMahan Securities Co., L.P.'s ("MSC") motion to dismiss Defendant FB Foods, Inc., f/k/a Funny Bagel Food Company, Inc.'s ("FBF") six affirmative defenses and amended counterclaim (Doc. No. 198). FBF filed a response in opposition thereto (Doc. No. 205).

**I.**  **Background and Procedural History[1]**

On December 14, 2005, FBF filed its Answer and Affirmative Defenses to Amended Complaint and an amended Counterclaim (Doc. No. 175). The amended counterclaim alleges anticipatory repudiation (Count I), breach of contract (Count II), unjust enrichment (Count III), fraud in the inducement (Count IV), fraudulent misrepresentation (Count V), negligent

---

[1]The Court will not state the entire extensive procedural background of this case here. Instead, this Court incorporates by reference the background and procedural history as outlined in this Court's Order on the Salgados' motion to dismiss MSC's amended complaint (Doc. No. 283).

1

misrepresentation (Count VI), and constructive fraud (VII).

FBF alleges in its amended counterclaim that since FBF and MSC severed their relationship, FBF has discovered that MSC and D. Bruce McMahan's[2] representations regarding MSC's experience with similarly situated companies, contacts with potential investors and prior successful engagements were false. In addition, MSC's assurances that, if retained, it would secure the needed capital on an expedited basis were also false. (Doc. No. 175, ¶43).

FBF alleges that in September 2003, FBF was introduced to representatives of MSC, "purportedly a private investment banking firm" (Doc. No. 175, ¶11). FBF further alleges that over the next month, FBF and MSC[3] engaged in frequent telephonic discussions and written correspondence concerning FBF's efforts to secure the capital to launch its new Adult Brand, and the capital to continue marketing and distributing its existing product Funny Meals. FBF contends that on or about November 7, 2003, FBF's officers and directors had a face-to-face meeting with MSC's Managing Director relating to MSC's acting as FBF's investment banker and that at that meeting MSC reiterated its representations pertaining to MSC's financial worth, contacts with potential investors and prior successful engagements (Doc. No. 175, ¶¶ 13 and 15). On November 7, 2003, MSC and FBF entered into an agreement ("Agreement") whereby MSC was engaged to introduce individuals or institutions to FBF who may be interested in investing in FBF's securities so as to provide FBF with financing in the amount of approximately

---

[2]D. Bruce McMahan ("McMahan") is not a named party in the instant action (Doc. No. 230).

[3]Through Michael Shillan ("Shillan") MSC's Managing Director of Investment Banking among others. The Court notes that Shillan ultimately executed the Agreement on behalf of MSC and listed his job title as "Managing Director-Investment Banking" (Doc. No. 175, Exh. A thereto).

$10,000,000 to $30,000,000 and FBF paid MSC a $50,000 retainer fee (Doc. No. 175, ¶16 and Exh. A thereto).

FBF alleges that over time, MSC expanded its involvement with FBF, including the parties agreeing that MSC would arrange for bridge financing for FBF in the amount of approximately $1.25 million (Doc. No. 175, ¶18). FBF further alleges that in late November 2003, MSC's Managing Director contacted FBF and insisted that FBF accept bridge financing in the amount of $1.75 million, of which $1 million was to be obtained from Veritas-Scalable Investment Products Fund, LLC, an entity controlled by D. Bruce McMahan (Doc. No. 175, ¶20). FBF contends that, without having any direct communications with any of the lenders, FBF received an aggregate of $1.75 million in financing from three entities (hereinafter "Bridge Financing") including Vertitas-Scalable Investment Products Fund, LLC. FBF paid MSC fees in excess of $200,000.00 for arranging the Bridge Financing.

FBF alleges that on February 1, 2004, senior FBF officials met with D. Bruce McMahan and MSC's Managing Director at MSC's corporate villa in Miami Beach and that at that meeting D. Bruce McMahan reiterated that MSC would support FBF even in the event a licensing agreement was not consummated (Doc. No. 175, ¶27).[4] Shortly thereafter, Weight Watchers International, Inc. ("WWI") advised FBF that it would not license use of its brand name in connection with FBF's Adult Brand (Doc. No. 175, ¶ 28). FBF further alleges that

---

[4]FBF alleges that on or about August 2003, it had commenced negotiations with a well-recognized international company to secure licensing rights for use of that company's brand name in connection with FBF's Adult Brand (the "Licensing Company")(Doc. No. 175, ¶10). In its amended complaint, MSC alleges that FBF entered into discussions with Weight Watchers International, Inc. ("WWI") to license the WWI trademark and sell the Adult Brand by and through WWI (Doc. No. 169, ¶16).

3

notwithstanding the Licensing Company's decision not to consummate the licensing arrangement, MSC again advised FBF that MSC was fully committed to the Adult Brand (Doc. No. 175, ¶29). FBF further alleges that MSC advised FBF that it should proceed with the launch of the Adult Brand, independent of a license agreement with an established name brand and that the inability to secure a licensing arrangement would not hinder MSC's ability to raise necessary capital expeditiously (Doc. No. 175, ¶30). FBF contends that based upon MSC's continued promises and assurances that funding was certain and imminent, FBF moved forward with the launch of the Adult Brand, including the creation of a new offering memorandum which contemplated a private-labeled Adult Brand instead of the utilization of a licensed established name brand (the "Private Label Book")(Doc. No. 175, ¶¶31-36). FBF alleges that in March 2004, MSC notified FBF that MSC's hedge fund had committed $10,000,000 to $15,000,000 to FBF and that FBF would receive the funds within ten (10) days of the publication of the Private Label Book (Doc. No. 175, ¶33).

## II.     **Standard of Review Motion to Dismiss**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Id. at 47. All that is required is "a short and plain statement of the claim."

Fed. R. Civ. P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986). The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures . . . to disclose more precisely the basis of both claim and defense." Conley, 355 U.S. at 48. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." Id.

### III. Discussion

#### A. MSC's Motion to Dismiss FBF's Amended Counterclaim

MSC seeks dismissal of FBF's amended counterclaim arguing that FBF has failed to state a claim upon which relief can be granted and that, with respect to Counts IV-VI, FBF has failed to comply with Fed. R. Civ. P. 9(b). Accordingly, the Court will analyze each count of the counterclaim with the exception of Count II.[5]

##### 1. Anticipatory Repudiation (Count I)

Aside from new paragraph numbering, Count I of FBF's amended counterclaim, anticipatory repudiation, is identical to Count I of the original counterclaim. This Court has previously denied MSC's motion to dismiss FBF's claim for anticipatory repudiation. However, MSC now raises a new argument in support of dismissal. Specifically, MSC argues that since

---

[5]Although MSC broadly moves to dismiss all seven counts of FBF's counterclaim, MSC fails to set forth any arguments in support of dismissal of FBF's claim for breach of contract (Count II). Therefore, this Court will not analyze this count.

performance under the Agreement occurred, the doctrine of anticipatory repudiation does not apply to the facts of this case. Although this Court has serious doubts regarding the applicability of the doctrine of anticipatory repudiation to the facts of this dispute, the Court finds that for purposes of surviving a motion to dismiss FBF has sufficiently plead a claim for anticipatory repudiation based upon MSC's alleged premature termination of the Agreement. See Lockheed Martin Corp. v. Galaxis USA, Ltd., 222 F. Supp. 2d 1315, 1340 (M.D. Fla. 2002); see also Metric Systems Corp. v. McDonnell Douglas Corp, 850 F. Supp. 1568, 1583 (N.D. Fla. 1994)(finding halting of performance in contravention of a duty to proceed as an anticipatory repudiation and a material breach). Accordingly, the Court denies MSC's motion to dismiss Count I of the amended counterclaim.

### 2. Unjust Enrichment (Count III)

In its order dismissing Count III of FBF's original counterclaim without prejudice, this Court noted that FBF improperly combined a claim for unjust enrichment with allegations that MSC breached the agreement (Doc. No. 39, p. 9). MSC now moves to dismiss Count III of the amended counterclaim with prejudice arguing that, in re-pleading its claim for unjust enrichment, FBF fails to deny the existence of a valid and enforceable contract. See Webster v. Royal American Cruises, Ltd., 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000). FBF responds that its reference to the Agreement within its claim for unjust enrichment was merely a scrivener's error and requests that the Court again dismiss FBF's claim for unjust enrichment without prejudice and grant FBF leave to amend its counterclaim to properly plead a claim for unjust enrichment.

The parties do not disagree that the Agreement and Amendment are a valid contract and

FBF filed copies of the Agreement and Amendment as attachments to its amended counterclaim. While claims of breach of contract and unjust enrichment may be plead in the alternative, proof of an express contract between parties defeats a claim for unjust enrichment. See Shibata v. Lim, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000). In light of the existence of a valid contract, and given FBF's failure to again properly allege a cause of action for unjust enrichment despite this Court's previous Order, the Court grants MSC's motion to dismiss Count III with prejudice.

### 3. Fraud in the Inducement (Count IV)

MSC makes multiple arguments in support of its contention that FBF's claim for fraud in the inducement should be dismissed. First, MSC states that the elements of fraud in the inducement are not pled and that to the extent the alleged misrepresentations relate to a promise to do something in the future they are not actionable. Second, MSC contends that FBF's claim of fraud in the inducement is barred by the parol evidence rule. Third, MSC argues that FBF's claim of fraudulent inducement is barred by the economic loss rule. Lastly, MSC contends that FBF's claim for fraudulent inducement fails to comply with Fed. R. Civ. P. 9(b). None of these arguments provide a basis to dismiss Count IV with the exception of the economic loss rule.

#### a. Failure to State a Claim

The elements of a claim for fraud in the inducement are: "(1) misrepresentation of material fact, (2) that the representer knew or should have known of the statement's falsity, (3) that the representer intended that the representation would induce another to rely on it, and (4) that the plaintiff suffered injury in justifiable reliance on such representation." Flamenbaum v. Orient Lines, Inc., 2004 WL 1773207, *5, fn. 4 (S.D. Fla. 2004)(citing Hillcrest Pacific Corp. v. Yamamura, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999)).

FBF alleges in Count IV of the amended counterclaim that, prior to the parties entering into the Agreement[6], MSC aggressively represented its experience with similarly situated companies and assured FBF that, if retained, MSC would secure the needed capital on an expedited basis (Doc. No. 175, ¶¶75 and 77-78). FBF also alleges that MSC knew or should have known these representations were false and that MSC made the misrepresentations to FBF with the intent to induce FBF into entering into the Agreement (Doc. No. 175, ¶¶44-47 and 85-86). Lastly, FBF alleges that it relied upon MSC's misrepresentations and as a result suffered substantial damages (Doc. No. 175, ¶¶87 and 88). FBF has sufficiently plead a claim for fraud in the inducement.

MSC also argues that FBF's claim for fraud in the inducement should be dismissed since "there is no valid allegation of a misrepresentation of a material fact." Specifically, MSC contends that the allegation that MSC did not have the experience necessary to obtain capital on an expedited basis is contradicted by the fact that MSC arranged for $1.75 million in Bridge Financing for FBF. Furthermore, MSC argues that the type of fraud alleged, "claimed experience coupled with assertions of future performance," cannot constitute fraud under Florida law.

While the Court agrees with MSC that as a general rule statements or promises of events to occur in the future, standing alone, are not a proper predicate for a claim of fraud, FBF has alleged more than merely a promise of future performance. Rather, FBF has made specific allegations regarding MSC's misrepresentations about its expertise with similarly situated companies and prior successful engagements. Florida law supports an action for fraud in the

---

[6]Dated November 7, 2003.

inducement based upon such claims of experience since they concern a past or existing fact. See Eastern Cement v. Halliburton Co., 600 So. 2d 469, 471 (Fla. 4th DCA 1992).

### b. Parol Evidence Rule

Generally speaking, parol evidence may not be introduced to vary or contradict the clear and unambiguous terms of a contract. See Ungerleider v. Gordon, 214 F.3d 1279, 1282 (11th Cir. 2000). However, to the extent that MSC is arguing that the integration or merger clause in the Agreement precludes FBF from making its fraudulent inducement claim, this Court disagrees. Under Florida law "if a party alleges that a contract was procured by fraud or misrepresentation as to a material fact, an integration clause will not make the contract incontestable, and the oral representations may be introduced into evidence to establish fraud." Meterlogic, Inc. v. Copier Solutions, Inc. et. al., 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000). Furthermore, the Agreement is silent with respect to MSC's expertise and therefore MSC's prior or contemporaneous oral statements do not contradict any written provision of the Agreement.

### c. Economic Loss Rule

MSC argues that FBF's claim for fraud in the inducement should be dismissed because, under Florida law, the economic loss rule bars fraudulent inducement claims when the fraudulent statements are "interwoven" into the agreement between the parties. See Eye Care Int'l, Inc. v. Underhill, 92 F. Supp. 2d 1310, 1314-15 (M.D. Fla. 2000); see also Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 78 (Fla. 3d DCA 1997). Specifically, MSC argues that claims for fraudulent inducement can only survive the economic loss rule "in situations in which the plaintiff can show that the fraudulent inducement is extraneous to the breach of contract." See Behrman v. Allstate Life Ins. Co., 388 F. Supp. 2d 1346, 1349 (S.D. Fla. 2005).

In <u>HTP, Ltd. v. Lineas Aereas Costarriceneses</u>, 685 So. 2d 1238, 1239 (Fla. 1996), the Florida Supreme Court noted that courts in many states have recognized the rule that a contract suit and a suit for fraud in inducing the contract are two different causes of action.  The Florida Supreme Court further explained that fraud in the inducement occurs where "parties to a contract appear to negotiate freely -- which normally would constitute grounds for invoking the economic loss doctrine -- but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." The fraudulent behavior could consist of either material misrepresentations of fact or omissions of fact.  <u>Id.</u> at 1240 (citing <u>Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc</u>, 532 N.W. 2d 541, 545 (Mich. Ct. App. 1995)).

In this case, FBF alleges that MSC made pre-contractual, material misrepresentations to FBF that undermined FBF's ability to negotiate and make informed decisions regarding the Agreement it entered into with MSC.  As a result of these allegations, FBF has sufficiently established an independent cause of action for fraudulent inducement.  Accordingly, this Court finds that the economic loss rule does not bar FBF's fraudulent inducement claim with respect to those alleged misrepresentations which occurred prior to the execution to the Agreement.

However, FBF also alleges that "[t]hroughout the course of the Parties' relationship" MSC made certain representations which were material to FBF's decision to execute the Amendment[7] and continue its relationship with MSC.  Furthermore, FBF alleges that based upon these "continuing promises and representations, FBF continued to incur substantial expenses associated with the launch of the Adult Brand" (Doc. No. 175, ¶¶83-84 and 86).  These

---

[7]Dated January 7, 2004.

continuing representations, made subsequent to the execution of the Agreement, are tantamount to assurances that MSC would perform under the Agreement. The alleged misrepresentations which occurred subsequent to the execution of the Agreement go to the very heart of the parties' contractual agreement and do not constitute a tort that is independent from the underlying contract. Therefore, MSC's motion to dismiss FBF's claim for fraudulent inducement is granted as to those alleged misrepresentations which occurred subsequent to the execution of the Agreement because those inducements are barred by the economic loss rule.

        d.       **Failure to Comply With Fed. R. Civ. P. 9(b)**

Lastly, MSC contends that FBF's claim for fraud in the inducement fails to comply with Fed. R. Civ. P. 9(b). This Court disagrees. With respect to those misrepresentations made prior to the execution of the Agreement, FBF avers that MSC misrepresented its expertise with similarly situated companies; made false representations pertaining to prior successful engagements; and falsely represented that it could raise capital on an expedited basis.

To the extent that MSC contends that FBF's claim for fraudulent inducement does not specify the time and place of the fraudulent statements, the Court notes that a specific time frame can easily be deduced from the face of the amended counterclaim. To the extent that MSC contends that FBF does not specify the persons who made the statements, MSC has knowledge as to which of its representatives met and negotiated with FBF. Here, the requirements of Fed. R. Civ. P. 9(b) are satisfied in that the amended counterclaim gives MSC fair notice of the nature of FBF's claims and the grounds upon which they are based.

        **4.**       **Fraudulent Misrepresentation (Count V) and Negligent Misrepresentation (Count VI)**

The elements of a claim for fraudulent misrepresentation are: "(1) a misrepresentation of

a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages." Romo v. Amedex Ins. Co., 2006 WL 399503, *5 (Fla. 3rd DCA 2006)(citations omitted)). The elements of a claim for negligent misrepresentation are: "the defendant made a misrepresentation of material fact that he believed to be true but was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresenation." Id. at *7 (citations omitted).

     FBF's claims for fraudulent misrepresentation and negligent misrepresentation largely repeat the allegations supporting FBF's claim for fraud in the inducement. Likewise, MSC reiterates the arguments it made in support of its motion to dismiss FBF's claim for fraud in the inducement. The Court finds that FBF has sufficiently alleged facts to support its claim for fraudulent misrepresentation and its claim for negligent misrepresentation and that the economic loss rule does not bar those claims with respect to those alleged misrepresentations which occurred prior to the execution of the Agreement. See Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., 982 F. Supp. 873, 880 (S.D. Fla. 1997)(holding that plaintiff's factual allegations in support of its claims for fraudulent misrepresentation and negligent misrepresentation set forth a claim for fraudulent inducement); see also Genron Enterprises, Ltd. v. Metecno Panel Sys., 2006 WL 1000320, *5 (M.D. Fla. 2006). However, the Court grants MSC's motion to dismiss Counts V and VI of the amended counterclaim with respect to alleged misrepresentations that

occurred after the execution of the Agreement finding they are barred by the economic loss rule.

**5. Constructive Fraud (Count VII)**

"Under Florida law, constructive fraud occurs 'when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005)(citing Levy v. Levy, 862 So.2d 48, 53 (Fla. 3rd DCA 2003)). MSC argues that FBF's claim for constructive fraud must be dismissed since there is no fiduciary duty between MSC and FBF. This Court agrees.

Paragraph 12 of the Agreement states in relevant part:

> The Company acknowledges that MSC is acting as an independent contractor in connection with its engagement hereunder and not in any other capacity, including as a fiduciary.

As the Agreement itself negates the existence of a fiduciary duty, FBF has not and cannot allege a cause of action against MSC for constructive fraud. See Mac-Gray Services, Inc. v. DeGeorge, 913 So.2d 630, 633 (Fla. 4th DCA 2005). Therefore, the Court grants MSC's motion to dismiss Count VII of the counterclaim with prejudice.

**B. FBF's Affirmative Defenses**

MSC also moves to dismiss FBF's six affirmative defenses. The Court construes MSC's motion with respect to FBF's six affirmative defenses as a motion to strike. "An affirmative defense will only be stricken . . . if the defense is 'insufficient as a matter of law.'" Microsoft Corp., 211 F.R.D 681, 683 (M.D. Fla. 2002)(quoting Anchor Hocking Corp. v. Jacksonville Electric Authority, 419 F. Supp. 992, 1000 (M.D. Fla. 1976)). An affirmative "defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or

(2) it is clearly invalid as a matter of law." Id. "To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is 'sufficient' and may survive a motion to strike, particularly when there is no showing of prejudice to the movant." Reyher v. Trans World Airlines, Inc., 881 F. Supp. 574, 576 (M.D. Fla. 1995)(citation omitted); see also Florida Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 1999 WL 781812, *1 (M.D. Fla. 1999).

Although FBF's affirmative defenses are largely repetitive of those it previously filed in August 2004, which this Court found sufficient[8], MSC moves again to strike all six of FBF's affirmative defenses, but on new grounds.

### A. First Affirmative Defense - Anticipatory Repudiation

In FBF's first affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, by the doctrine of anticipatory repudiation. FBF was ready, willing and able to fulfill its obligations under the agreement it entered into with MSC on November 7, 2003 ("Agreement") and the amendment to the Agreement entered into on January 7, 2004 ("Amendment"). However, MSC wrongfully and prematurely terminated the Agreement and Amendment and, as a result, FBF has suffered, and continues to suffer, damages.

(Doc. No. 174, p.10). For the reasons the Court stated above in denying MSC's motion to dismiss Count I of FBF's counterclaim for anticipatory repudiation, MSC's motion to strike FBF's first affirmative defense alleging anticipatory repudiation is denied.

### B. Second Affirmative Defense - Breach of the Agreement

In FBF's second affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, because MSC breached the

---

[8]On April 13, 2005, this Court granted MSC's motion to strike FBF's affirmative defenses to the extent that FBF's second, third and six affirmative defenses contained language that MSC failed to use its best efforts to locate potential investors. The motion was otherwise denied (Doc. No. 39).

14

Agreement by, among other things, improperly terminating the Agreement, and fraudulently and continuously representing to FBF that it had commitments from certain private investors who were ready, willing and able to inject substantial capital into FBF. As a result of MSC's breach of the Agreement, FBF has suffered and continues to suffer damages.

MSC argues that FBF is improperly attempting to allege a fraud defense as a breach of contract defense and that the economic loss rule bars the second affirmative defense. In its response, FBF confirms that its second affirmative defense is based upon breach of contract and not fraud. As this Court has previously held, FBF has identified which provisions of the Agreement MSC allegedly breached (Doc. No. 39, ¶6). Accordingly, MSC's motion to strike FBF's second affirmative defense is denied.

### C. Third Affirmative Defense - Breach of the Amendment to the Agreement

Likewise, in FBF's third affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, because MSC breached the Amendment to the Agreement. The terms of the Amendment modified MSC's obligations pursuant to the Agreement. MSC breached the Amendment by, among other things, improperly terminating the Agreement, and fraudulently and continuously representing to FBF that it had commitments from certain private investors who were ready, willing and able to inject substantial capital into FBF. As a result of MSC's breach of the Amendment, FBF has suffered and continues to suffer damages.

With respect to FBF's third affirmative defense, MSC argues that the Amendment is not a document separate from the Agreement which would give rise to a separate affirmative defense. FBF responds that "in light of MSC's recognition that the Amendment is part of the contract," it will agree to strike its third affirmative defense as redundant.

### D. Fourth Affirmative Defense - Condition Precedent

In FBF's fourth affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, because MSC failed to satisfy a condition precedent, namely, MSC failed to give FBF proper notice of termination as

required by the terms of the Agreement and Amendment.

MSC moves to strike FBF's fourth affirmative defense on the basis that "[u]nder the Agreement, termination is not a condition precedent to filing suit." FBF responds that "thirty days written notice was a condition precedent to termination of the contract under Section 7(b)" and that "MSC's termination of the Agreement absent proper notice constituted both a breach and an anticipatory repudiation of MSC's on-going obligations." While the Court considers FBF's fourth affirmative defense largely duplicative of its first and second affirmative defenses, it is not insufficient as a matter of law. Therefore, MSC's motion to strike FBF's fourth affirmative defense is denied

### E. Fifth Affirmative Defense - Unclean Hands

In FBF's fifth affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, by the doctrine of unclean hands. Specifically, MSC cannot recover damages because it continuously misrepresented to FBF that it had commitments from investors who were ready, willing and able to inject substantial capital into FBF.

MSC argues that the defense of unclean hands fails as matter of law since it, as an equitable defense, cannot be used to bar a claim for damages. However, since MSC has plead a claim for reformation, the Court finds FBF's fifth affirmative defense is not insufficient as a matter of law. Therefore, MSC's motion to strike FBF's fifth affirmative defense is denied

### F. Sixth Affirmative Defense - Prevention of Performance

In FBF's sixth affirmative defense, FBF states:

MSC's Amended Complaint is barred, in whole or in part, by the doctrine of prevention of performance. FBF was ready, willing and able to fulfill its obligations under the Agreement and Amendment. However, MSC breached the Agreement and the Amendment by, among other things, improperly terminating the Agreement and fraudulently and continuously representing to FBF that it had commitments from certain

private investors who were ready, willing and able to inject substantial capital into FBF, prevented FBF from performing its obligations under the Agreement and the Amendment.

MSC argues that FBF's sixth affirmative defense for prevention of performance fails because it does not allege that MSC was solely responsible for FBF's nonperformance and that "the basis of this purported defense," namely MSC's alleged representations to FBF that it had commitments from certain investors, is contradicted by the terms of the Agreement. The Court finds FBF's sixth affirmative defense is not insufficient as a matter of law since the Agreement was allegedly an exclusive contract. Accordingly, MSC's motion to strike FBF's sixth affirmative defense is denied.

### IV.   Conclusion

Having considered the motion, it is **ORDERED AND ADJUDGED** that:

(1)   MSC's motion to dismiss FBF's amended counterclaim and affirmative defenses (Doc. No. 198) is **GRANTED IN PART** as follows:

   (a)   FBF's claim of unjust enrichment (Count III) is dismissed with prejudice.

   (b)   FBF's claims for fraud in the inducement (Count IV), fraudulent misrepresentation (Count V), and negligent misrepresentation (Count VI) are dismissed with prejudice as to the alleged misrepresentations which occurred subsequent to the execution to the Agreement.

   (c)   FBF's claim of constructive fraud (Count VII) is dismissed with prejudice.

   (d)   FBF's third affirmative defense is **STRIKEN** as redundant.

   (e)   The motion is otherwise **DENIED**.

17

  (2) MSC shall respond to the amended counterclaim on or before July 7, 2006.

 **DONE AND ORDERED** at Tampa, Florida, this 29th day of June, 2006.

Copies to:

Counsel of Record

/s/ Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge