UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

McMAHAN SECURITIES CO. L.P,

                 Plaintiff,

-vs-                                               Case No.  8:04-cv-1791-T-24TGW

FB FOODS, INC., f/k/a
Funny Bagel Food Company, Inc.,

                 Defendant.
_____/

# **O R D E R**

This cause comes before the Court on Defendant FB Foods, Inc.'s ("FBF") Motion in

Limine to Preclude Testimony of Plaintiff's Expert Bruce S. Foerster (Doc. No. 264) and

McMahan Securities Co. L.P.'s ("MSC") response thereto (Doc. Nos. 275).

## **I.**      **Background**[1]

On May 1, 2006, MSC filed its motion for summary judgment seeking dismissal of

FBF's amended counterclaim and associated affirmative defenses (Doc. No. 234).  On May 24,

2006, FBF filed a response in opposition to MSC's motion for summary judgment (Doc. No.

261).  Thereafter, but prior to this Court ruling on MSC's motion for summary judgment, FBF

---

[1]The Court will not state the entire procedural and factual background of this case here. Instead, this Court incorporates by reference the background and procedural history as outlined in this Court's Order on Defendant's, William Salgado and Alexander Salgado (collectively "the Salgados"), motion to dismiss MSC's amended complaint (Doc. No. 283) and the factual background in this Court's Order on MSC's motion for summary judgment (Doc. No. 312).

filed its motion in limine as to Bruce S. Foerster.

On August 25, 2006, MSC moved for judgment on the pleadings on Defendants William Salgado's and Alexander Salgado's affirmative defenses[2] (Doc. No. 310), which this Court denied as untimely (Doc. No. 311).  As discussed in greater detail below, on September 15, 2006 this Court entered an Order granting in part and denying in part MSC's motion for summary judgment (Doc. No. 312).  Also on September 15, 2006, this Court entered an Order in which it rescheduled the Final Pretrial Conference from September 25, 2006 to December 8, 2006, continued the trial of the matter until the January 2007 trial calender.

## II.     Standard of Review

Pursuant to the Federal Rules of Evidence, the trial court acts as a "gatekeeper" to ensure that expert testimony is both reliable and relevant before it is admitted into evidence.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  Federal Rule of Evidence 702, which controls the admission of expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party proffering the expert bears the burden of demonstrating that its proffered expert is qualified to render an expert opinion, that the opinion is reliable, and the opinion would assist the trier of fact in resolving a disputed issue of material fact.  See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).  This Court notes that a district court has considerable

_____

[2]MSC sought an Order from this Court dismissing the Salgados' first, second, third, fourth, sixth, seventh and eighth affirmative defenses.

leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.

### III.      FBF's Motion to Exclude the Testimony of Bruce S. Foerster

FBF seeks to preclude the testimony of MSC's expert witness Bruce S. Foerster ("Foerster"), who will testify largely with respect to the parties' Agreement and Amendment[3] and MSC's performance thereof.  Specifically, FBF seeks "to exclude the Expert Report of Mr. Foerster and further preclude his anticipated trial testimony on the basis that Mr. Foerster's opinion constitutes an impermissible legal conclusion" (Doc. No. 264).  Additionally, FBF argues that Foerster's opinions that certain representations made by MSC were either "true" or that FBF could not have relied on such representations should be excluded as unreliable, irrelevant, and/or unduly prejudicial.  MSC argues that FBF's attempt to preclude the expert testimony of Foerster should be denied in that Foerster's testimony will distinguish the role of a "finder and facilitator" of financing from the role of an investment banker.  To the extent FBF seeks to exclude the expert report the motion is granted.  Foerster's Expert Report (as well as the Expert Reports of the other experts) will not be admitted into evidence as an exhibit.

Federal Rule of Evidence 704(a) allows an expert to testify in the form of an opinion or inference that embraces an ultimate issue of fact.  However, expert testimony that expresses a legal conclusion is inadmissible.  See Cook v. Sheriff of Monroe County, Florida, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005)(noting that "an expert witness may not substitute for the court in

---

[3]On or about November 7, 2003, MSC and FBF entered into an agreement whereby "MSC agreed to act as FBF's exclusive finder of financing for FBF's proposed new product line" (the "Agreement").  On January 7, 2004, the Agreement was amended (the "Amendment")(Doc. No. 312).

charging the jury regarding the applicable law"); see also Montgomery v. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990)(stating "[a] witness may not testify to the legal implications of conduct").  In his expert report dated February 21, 2006, Foerster describes his expertise as "investment banking" (Doc. No. 264, Exhs. A and B).  The analysis in Foerster's expert report is broken down into three parts: (A) The Parties' Agreement; (B) Activities Performed by MSC; and (C) Alleged Misrepresentations.  The Court notes that FBF does not specifically challenge Foerster's qualifications to render an expert opinion.  Rather, FBF argues that in his expert report, Foerster ventures into the role of the court by construing the meaning and effect of the Agreement.  FBF also contends that Foerster improperly supplants the jury's role as arbiter of facts by concluding that certain representations made by MSC were "true" or that FBF "could not rely or have been misled" by MSC's representations.  To the extent that FBF's motion in limine regarding Foerster has not been rendered moot by Orders entered subsequent to its filing and briefing, this Court agrees that Foerster's opinions construing the Agreement should be excluded.

Generally speaking, interpretation of a written contract is a matter of law to be determined by the court.  See DEC Elec., Inc. v. Raphael Const. Corp., 558 So. 2d 427, 428 (Fla. 1990).  In ruling on MSC's motion for summary judgment, this Court examined in detail the express terms of the Agreement and Amendment in light of MSC's conduct.  This Court granted MSC's motion for summary judgment on Count II of FBF's amended counterclaim and related affirmative defenses[4] "to the extent that under the Agreement and Amendment MSC is not required to provide funds to FBF by conducting closings it represented were imminent or

---

[4]Breach of Contract (Count II and FBF's Second, Fourth and Sixth Affirmative Defenses).

through its own promised capital injections."  Otherwise, the motion was denied as to Count II of

FBF's amended counterclaim and related affirmative defenses.  As such, it is impermissible for

Foerster to testify regarding the scope of MSC's duties under the Agreement and Amendment.

See Montgomery, 898 F.2d at 1541.

MSC, relying on Maiz v. Virani, 253 F.3d 641, 667 (11th Cir. 2001) contends that

Foerster is permitted to state reasonable assumptions regarding the requirements of the

Agreement to put his opinion in context.  If Foerster's opinion had focused on the customary

practices of the securities industry, i.e., defining the duties of a finder of financing versus an

investment banker, there would be little question as to whether it was helpful and admissible.

However, despite MSC's arguments to the contrary, Foerster's opinion seems to proffer his

interpretation of the Agreement.  By way of example, Foerster makes the following statements in

his Expert Report:

> As such, the Agreement strictly and severely limits the duties and responsibilities
> of MSC with respect to the Financing.

(Doc. No. 264, Exh. A, p. 4).

> In my opinion, the Agreement constitutes MSC strictly as a "finder," defined in *Black's
> Law Dictionary* as "An intermediary who contracts to find, introduce and bring
> together parties to a business opportunity, leaving ultimate negotiations and
> consummation of business transaction to the principals."

(Doc. No. 264, Exh. A, p. 5)(citation omitted).

> Had FBF informed MSC of this negative news[5] in a timely manner . . . MSC would
> have had every right under the Agreement to cease providing any services to FBF
> immediately.

(Doc. No. 264, Exh. A, p. 7).

---

[5]WWI's decision not to license its brand name.

> In my opinion, such information[6] certainly provided the basis, under the so-called MAC provision of the Agreement, for MSC to cease providing any services.

(Doc. No. 264, Exh. A, p. 10).

To the extent that Foerster intends to express opinions regarding MSC's alleged misrepresentations, the Court notes that certain of these misrepresentations[7] were addressed as part of this Court's Order on MSC's motion for summary judgment.  Furthermore, the Court has previously dismissed FBF's claims for fraud (Counts IV-VI) as to those alleged misrepresentations which occurred subsequent to the execution of the Agreement because those inducements are barred by the economic loss rule.  With respect to MSC's purported misrepresentations which are still at issue in this case[8], the Court finds that Foerster's pronouncements with respect to the potential veracity of these statements is of little value in that Foerster speaks as to what functions FBF could expect MSC to perform under the Agreement and doesn't specifically address those representations which MSC purportedly made to FBF pre-Agreement.  Furthermore, it is the role of the jury and not Foerster to determine whether FBF could rely on MSC's representations.  See Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So. 2d 168, 173 (Fla. 4th DCA 1994); see also Pinzl v. Lapointe, 426 So. 2d 65, 66 (Fla. 5th DCA 1983).  As such, to the extent that FBF's motion in limine is to preclude the opinion of Foerster

---

[6]FBF's purported financial difficulties in June 2004.

[7]Namely, MSC's "continually misrepresenting to FBF that it had commitments from certain private investors who were ready, willing and able to inject substantial capital into FBF" and failing to deliver the funds and failing to "inject into FBF funds through either closings it represented were imminent or its own promised capital injections."

[8]The alleged misrepresentation that MSC purportedly made to FBF pre-Agreement regarding MSC's experience, know-how, contacts, and ability to expeditiously raise capital.

6

regarding construction of the Agreement and the veracity of the alleged misrepresentations is it granted.  However, in that Foerster's testimony regarding customary practices and terminology of the securities industry might be helpful to the trier of fact, this Court declines to preclude Foerster from testifying in totality.

**IV.**     **Conclusion**

Accordingly, it is **ORDERED and ADJUDGED** that Defendant FB Foods, Inc.'s ("FBF") Motion in Limine to Preclude Testimony of Plaintiff's Expert Bruce S. Foerster (Doc. No. 264) is **GRANTED** to the extent that Foerster's Expert Report will not be admitted into evidence as an exhibit.  Furthermore, Foerster may not testify regarding the scope and meaning of the Agreement and the veracity of the alleged misrepresentations.  However, Foerster may testify as to customary practices and terminology of the securities industry.

**DONE AND ORDERED** at Tampa, Florida, this 8th day of February, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record