UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

McMAHAN SECURITIES CO. L.P,

        Plaintiff,

-vs-                                                      Case No.  8:04-cv-1791-T-24TGW

FB FOODS, INC., f/k/a
Funny Bagel Food Company, Inc.,

        Defendant.
_____/

# **O R D E R**

This cause comes before the Court on McMahan Securities Co. L.P.'s ("MSC") Motion In Limine to Exclude the Testimony of FB Foods, Inc.'s ("FBF") Experts and to Limit Defendant's Damages (Doc. No. 285) and Motion in Limine to Preclude Use of Business Plans as Evidence of Lost Profit Damages (Doc. No. 332).  Defendants filed responses in opposition thereto (Doc. No. 301 and 366).  As FBF's damages experts based their opinions upon a business plan drafted in April 2004 ("the April 2004 Business Plan"),[1] and therefore MSC's motions in limine pertain to interrelated subject matter, the Court held a hearing on both motions on March 1, 2007.  FBF's damages experts Richard J. George, Ph.D. and Joaquin Urquiola testified at that hearing.  After consideration of the motions, the responses, the parties' oral arguments, and the testimony of Richard J. George, Ph. D. ("George") and Joaquin Urquiola ("Urquiola"), this

---

[1] What this Court previously termed the Private Label Book, which was completed in late April 2004 (Doc. No. 312, p. 7)

1

Court grants the motions for the reasons set forth herein.

**I.     Background[2]**

On May 1, 2006, MSC filed its motion for summary judgment seeking dismissal of FBF's amended counterclaim and associated affirmative defenses (Doc. No. 234). On May 24, 2006, FBF filed a response in opposition to MSC's motion for summary judgment (Doc. No. 261). Thereafter, but prior to this Court ruling on MSC's motion for summary judgment, MSC filed its motion in limine as to FBF's damages experts (Doc. No. 285). Subsequently, after this Court entered an Order granting in part and denying in part MSC's motion for summary judgment (Doc. No. 312) and after the Court held a pre-trial conference on December 8, 2006, MSC filed its motion in limine to exclude the Business Plans[3] as evidence of FBF's damages claim in this case.

**II.    Standard of Review**

Pursuant to the Federal Rules of Evidence, the trial court acts as a "gatekeeper" to ensure that expert testimony is both reliable and relevant before it is admitted into evidence. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702, which controls the admission of expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to

---

[2] The Court will not state the entire procedural and factual background of this case here. Instead, this Court incorporates by reference the background and procedural history as outlined in this Court's Order on Defendant's, William Salgado and Alexander Salgado (collectively "the Salgados"), motion to dismiss MSC's amended complaint (Doc. No. 283) and the factual background in this Court's Order on MSC's motion for summary judgment (Doc. No. 312).

[3] The April 2004 Business Plan and FBF's subsequently created scaled back business plan that contemplated a regional rollout of the Adult Brand (the "July 2004 Business Plan")(Doc. No. 366).

    understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The party proffering the expert bears the burden of demonstrating that its proffered experts is qualified to render an expert opinion, that the opinion is reliable, and the opinion would assist the trier of fact in resolving a disputed issue of material fact. See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004); see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

### III.   Discussion

MSC seeks to preclude the testimony of FBF's experts as to the future lost profits of FBF. Additionally, MSC seeks to limit FBF's damages claims and preclude FBF from introducing the Business Plans as evidence of its future lost profits damages claim in this case. Since MSC's motions in limine are intertwined, the Court considered them largely together for purposes of addressing MSC's motion in limine regarding FBF's experts on damages.

#### A.   MSC's Motion to Exclude the Testimony of FBF's Experts And To Limit FBF's Damages

MSC seeks to exclude the expert opinions and testimony of Richard J. George, Ph. D.[4] and John B. Lord, Ph. D.[5] ("George and Lord")[6] and the opinion and testimony of Joaquin

---

[4] A professor of food marketing at St. Joseph's University.

[5] A professor of food marketing at St. Joseph's University

[6] FBF telephonically advised the Court that while Richard J. George, Ph. D. and John B. Lord, Ph. D. worked together on their expert report ("George and Lord Report"), only Richard J. George would appear at the Daubert hearing due to scheduling. Accordingly, only the testimony of Richard J. George would be offered at trial.

Urquiola[7] ("Urquiola") arguing that these opinions are impermissibly premised upon "an entirely speculative business plan."  MSC does not question the qualifications of FBF's damages experts but contends that they use faulty reasoning and methodologies to arrive at their damages calculations and, as a result, their conclusions as to FBF's damages are pure speculation.

MSC's motion in limine essentially calls into question the admissibility of the experts' testimony under the standard set forth in Daubert and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).  An expert's testimony must be reliable so that it must be "scientific," meaning grounded in the methods and procedures of science, and must constitute "knowledge," meaning something more than subjective belief or unsupported assumptions.  Daubert, 509 U.S. at 590.  The Court's gatekeeping function is "'to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'"  Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005)(citations omitted).

In their response to MSC's motion in limine on FBF's damages experts, Defendants state that George and Lord "will testify as to the appropriateness of FBF's product development plan to bring the Adult Brand[8] to market as well as the great likelihood of success the Adult Brand would have achieved due to market opportunity had FBF been able to complete the product development process."  Defendants state that Urquiola's report provides calculations of the future lost profits that FBF suffered as a result of MSC's wrongful conduct.  Defendants contend that MSC arguments in support of its motion in limine with respect to FBF's damages experts

---

[7]A Certified Public Accountant and partner in the public accounting firm of Goldstein Schechter Price Lucas Horowitz & Co., P.A.

[8]The Adult Brand has also been referred to as the "Wellness Brand" in this litigation.

are flawed in that "all three of FBF's experts use the Private Label Book, developed in conjunction with and approved by MSC, as the basis for their analysis and conclusions." As discussed below with respect to MSC's motion in limine to exclude FBF's Business Plans, the Court finds Defendants' argument that MSC is bound by the projections in the April 2004 Business Plan unpersuasive because Defendants' fail to cite any binding precedent for this contention.

In its amended counterclaim[9], FBF seeks future lost profits in the amount of $64,456,000.00 and out of pocket expenses of $1,014,749.40. However, in its response to MSC's motion in limine, FBF acknowledges that it cannot ultimately recover both lost profits and out of pocket expenses.

George's opinions regarding future lost profits, and hence Urquiola's since he based his opinion on the George and Lord Report, are prefaced upon FBF's April 2004 Business Plan which was prepared to attract investors. The uncertain and speculative nature of assumptions in the April 2004 Business Plan, particularly the five year future sales projections, undermine George's later methodology and opinions regarding the future lost profits. "Under Florida law, '[t]he general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss." Alphamed Pharmaceuticals,Corp. v. Arriva Pharmaceuticals, Inc., 432 F. Supp. 2d 1319, 1339 (S.D. Fla. 2006)(citations omitted). Assuming for the purposes of this motion that FBF can prove causation, FBF must still provide competent evidence sufficient to satisfy the mind of a prudent

---

[9]FBF asserts claims for anticipatory repudiation (Count I), breach of contract (Count II), fraud in the inducement (Count IV), fraudulent misrepresentation (Count V), and negligent misrepresentation (Count VI).

impartial person as to the reasonableness of the amount of profits lost. Sostchin v. Doll Enterprises, Inc., 847 So. 2d 1123, 1128 (Fla. 3d DCA 2003)(quoting North Dade Cmty. Dev. Corp. v Dinners's Place, Inc., 827 So. 2d 352 (Fla. 3d DCA 2002)). "Any 'yardstick' used to show the amount of profits must be reasonable, and the loss of the profits . . . must be reasonably certain . . . Such an award cannot be based upon speculation or conjecture." Id. (citations omitted); see also Nebula Glass Int'l v. Reichhold, Inc., 454 F.3d 1203, 1214-19 (11th Cir. 2006).

      The April 2004 Business Plan was prepared by FBF for the purpose of attracting investors. The April 2004 Business Plan contemplated a national launch of an Adult Brand of convenient refrigerated food. The launch of the Adult Brand was based on the assumption that funding in the amount of $40,000,000.00 would be secured. FBF never received this level of funding. The George and Lord Report is dated December 2005. The Urquiola report is dated February 2006. However, during the hearing George testified that he did not look at events after April 2004, including the July 2004 Business Plan, because he was told by Defendants to base his opinion on the April 2004 Business Plan. In their adoption of the *pro forma* sales projections and future profits of the Adult Brand contained in the April 2004 Business Plan, FBF's damages experts failed to consider events that preceded or followed.

      FBF acknowledges that it subsequently created a scaled back business plan that contemplated a regional, rather than national, rollout of the Adult Brand (the "July 2004 Business Plan")(Doc. No. 285, Exh. H). However, FBF contends it "only altered its strategy after and because of MSC's abrupt and wrongful termination of the Agreement and Amendment." The July 2004 Business Plan contained reduced financial projections. Yet,

despite the relatively short time frame between the two Business Plans, it does not appear that the FBF's damages experts ever factored in the apparent inaccuracies of the *pro forma* sales projections for FBF's existing Funny Meal line[10], as contained in the April 2004 Business Plan versus the subsequent July 2004 Business Plan, when opining about the five year sales projections for the never launched Adult Brand. Specifically, Funny Meals' projected 2004 sales declined approximately $2.5 million between the two Business Plans. In fact, during the hearing, both George and Urquiola testified that they did not consider what was happening with FBF's existing Funny Meal line, namely the purported $500,000 monthly loss. Furthermore, both George and Urquiola testified that they based their opinions on a relatively short time period, or a "snapshot", of how the Funny Meal line was doing in early 2004, instead of historically, in endorsing the *pro forma* sales projections contained in the April 2004 Business Plan.

FBF argues that it will demonstrate at trial that the Adult Brand was conceptually sound and that in 2004 the marketplace was ready for a healthy, prepackaged meal targeted for busy adults." FBF concedes however that many new products introduced into the supermarket fail within six months of introduction. Additionally, George testified that there is little data available regarding the success of small companies such as FBF in launching products. Notwithstanding, FBF argues that the steps for product development contemplated by FBF are consistent with the launch of other successful new products into America's supermarkets and that George and Lord "can conclude with a reasonable degree of scientific certainty that the

---

[10] MSC alleges FBF ceased selling Funny Meals in November 2005. In fact, MSC contends FBF is no longer in business.

Adult Brand would have been a market success." The Court finds Defendants' arguments unavailing.

The April 2004 Business Plan, and FBF's experts' opinions on damages premised thereon, are based in part on the following assumptions: (1) that large food retailers would endorse the Adult Brand or otherwise determine to sell the Adult Brand; (2) that consumer research results would be positive for the Adult Brand and that consumers would purchase the Adult Brand at assumed levels; and (3) that FBF would be the first to market and would not face direct competition in the adult lunch market. In hindsight, these events did not occur nor can this Court conclude with any reasonable certainty that even if FBF had been first to market the Adult Brand would have been successful. In fact, in June 2004, Kraft announced that it intended to launch what would have been a competitive new product line -- the South Beach diet meals.

In <u>Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.</u>, 254 F. Supp. 2d 1239, 1247- 49 (M.D. Fla. 2003), which involved a claim for future lost profits, the court observed:

> Here, hindsight works to the Plaintiff's detriment, AIG is known to have ceased its sales of GPC as of May 15, 2002. Plaintiff's projection of lost profits is based on several assumptions which are not grounded on known facts, but speculation and conjecture on what might have happened after May 15, 2002. In such a case, Florida law is clear that future lost profits are not recoverable. Florida law requires that assumptions used to support the conclusions be reasonably certain, not mere best case scenario predictions.
>
> This case is a good example of the unreliability inherent in basing an opinion on a marketing estimate. These estimates were for a new product that AIG did not even own at the time. They were prepared in the process of conducting due diligence . . ..

Likewise, the assumptions upon which FBF's experts base their opinions as to future lost profits are not grounded upon sufficient known facts and do not withstand scrutiny for reliability, and therefore admissibility. The future lost profits testified to by FBF's experts are no more than

8

hopeful estimates.

While MSC may have "signed off" on the April 2004 Business Plan and used it to seek potential investors for FBF, it is clear in hindsight that the April 2004 Business Plan was a "best case scenario prediction" for the prospective launch of the Adult Brand and cannot support FBF's lost profits claim.  See Alphamed, 432 F. Supp. at 1347 (lost profits for proposed new product held not recoverable since assumptions with respect to bringing the product to market were "demonstrably false, prohibited by law, or at the very least speculative"); see also Fixel v. Rosenthal & Rosenthal, Inc., 921 So. 2d 43, 46 (Fla. 3d DCA 2006).

During the hearing, Urquiola testified that "on the revenue side I relied on Dr. George and Dr. Lord's assumptions" and did not independently verify any of FBF's revenue projections.

Urquiola performed his financial analysis based on George and Lord's opinion that the *pro forma* sales projections were achievable.  To the extent that George and Lord's opinion as to future lost profits are not reasonably certain, neither are Urquiola's.

Based upon the record before this Court, it appears that the Adult Brand never proceeded past the prototype stage or underwent qualitative testing.  Furthermore, no food retailer had agreed to sell the product.  As such, while FBF's damages experts may be qualified to testify, the reliability of their methodology has not been sufficiently shown since their opinions as to future lost profits are impermissibly premised on the projected future earnings contained in FBF's April 2004 Business Plan and on speculation with respect to the anticipated development, promotion, and sales of the Adult Brand.

      **B.**    **MSC's Motion in Limine to Preclude Use of Business Plan as Evidence of Lost Profit Damages (Doc. No. 332)**

MSC also seeks to preclude FBF from introducing the Business Plans, and particularly the *pro forma* projections contained therein, as evidence of its lost profit damages claim. MSC also requests that the Court issue a limiting instruction upon the admission of any documents related to the Business Plans' *pro forma* projections. Defendants respond that the *pro forma* projections, created pre-suit and in conjunction with MSC to solicit investors, can be used as a basis for determining FBF's damages in this case. Specifically, Defendants argue that since the April 2004 Business Plan was created by the parties pre-litigation its financial projections should be considered reliable and used to support an award of lost profits. Defendants fail to cite any binding precedent for their argument that MSC, or this Court, are bound by the hoped for future earnings projections contained in the April 2004 Business Plan. As such, the motion in limine is granted.

### **VI.** **Conclusion**

Accordingly, it is **ORDERED and ADJUDGED** that:

(1) MSC's Motion In Limine to Exclude the Testimony of FB Foods Inc.'s Experts and to Limit Defendant's Damages (Doc. No. 285) is **GRANTED**.

(2) MSC's Motion in Limine to Preclude Use of Business Plan as Evidence of Lost Profit Damages (Doc. No. 332) is **GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of March, 2007.

Copies to:

Counsel of Record

SUSAN C. BUCKLEW
United States District Judge